E. R. Squibb & Sons et al. *v.* United States

No. 8094.—

Entry No. 736359, etc.

(Decided February 25, 1952)

*Lane, Young & Fox* (*James W. Bevans* and *William Whynman* of counsel) for the plaintiffs.

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster, Charles J. Miville*, and *Guy Gilbert Ribaudo*, special attorneys), for the defendant.

Lawrence, Judge: The appeals for reappraisement enumerated in schedule "A," attached hereto and made a part of the decision herein, were consolidated for trial and will be decided as one case. No. 145139–A is a so-called test case, while the other five appeals relate to "duress" entries in which advances were voluntarily made by the importers to meet the value returned by the appraiser in the test case.

The merchandise in controversy consists of what are known as Iceland squat steel drums which were imported filled with medicinal cod-liver oil. It appears from the record that the oil was purchased on a gallon or tonnage basis, the price of which included the cost of the drums. The drums were not separately purchased by nor commercially invoiced to the importers, but the cost of the drums to the exporter was separately stated on the consular invoices for convenience in customs administration.

Parenthetically it may be pointed out that cod-liver oil is classified in paragraph 1730 (b) of the Tariff Act of 1930 (19 U. S. C. § 1201, par. 1730 (b)) and is duty-free. However, paragraph 328 of said act (19 U. S. C. § 1001, par. 328) contains a provision for "* * * cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; * * * 25 per centum ad valorem; * * *." Said drums were advisorily classified for duty

by the appraiser as vessels of the kind described in said paragraph 328. Further reference to this provision will be made *infra*.

The appraiser returned an export value for the drums pursuant to section 402 (d) of said act (19 U. S. C. § 1402 (d)).

Plaintiffs claim that there is neither a foreign nor an export value for the drums within the meaning of section 402 (c) of said act, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), or section 402 (d) of said act of 1930, and that the drums should be appraised on the basis of United States value pursuant to the terms of section 402 (e) of the act of 1930, as amended by the act of 1938, *supra* (19 U. S. C. § 1402 (e)).

The statutory provisions relating to value, above referred to, read as follows:

SEC. 402. VALUE.

    *       *       *       *       *       *       *

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

In reappraisement 145139–A, the drums were appraised at $5.15 each. In the other five reappraisement appeals, with one exception noted below, the drums were appraised at $8.37 each. In reappraisement 152231–A, the drums were appraised at $8.38 each. The importers sought to enter the drums at $1 each in every instance.

The following exhibits were received in evidence:

Plaintiffs' exhibit 1, collective exhibit 2, and exhibit 3 are four empty drums from the shipments covered by reappraisements 151856–A, 151857–A, and 152231–A. Inasmuch as exhibit 1 is typical of all the drums, collective exhibit 2 and exhibit 3 were withdrawn.

Plaintiffs' exhibit 4, a pamphlet known as I. C. C. No. 4 (Freight Tariff No. 4).

Plaintiffs' exhibit 5, affidavit of Bernh. Petersen.

Plaintiffs' exhibit 6, affidavit of T. Thorbjarnarson, Ph. D.

Defendant's collective exhibit 7, a list of purchases on stationery of Fred Wagner, Jr.

Defendant's exhibit 8, the report of Lincoln MacVeagh, American Minister to Iceland, dated April 23, 1942, No. 87, with forwarding letter from the Secretary of State to the Secretary of the Treasury, dated May 9, 1942.

Defendant's collective exhibit 9, the joint report of Customs Agent A. A. Christides and Examiner W. A. Taylor, dated November 25, 1944, file No. 2–4.

Defendant's exhibit 10, the report of William C. Trimble, chargé d'affaires ad interim at Iceland, dated February 13, 1947, No. 802.

Plaintiffs' exhibit 11, affidavit of Daniel R. Collins, general credit manager of E. R. Squibb & Sons.

It is clear from the record and briefs in this case that the parties litigant recognize the fundamental principle that it is the condition of merchandise at the time it arrives in this country which must be considered not only in determining its dutiable classification but, as well, its dutiable valuation. *Worthington* v. *Robbins*, 139 U. S. 337; *United States* v. *Schoverling*, 146 U. S. 76; *Moore* v. *United States*, 1 Ct. Cust. Appls. 115, T. D. 31117, and cases cited; *Sands & Leckie* v. *United States*, 10 Treas. Dec. 772, T. D. 26956; *United States* v. *Braun Chemical Co.*, 2 Ct. Cust. Appls. 57, T. D. 31596; *Colby & Co.* v. *United States*, 3 Ct. Cust. Appls. 234, T. D. 32542; *McKesson & Robbins (Inc.) et al.* v. *United States*, 61 Treas. Dec. 1417, Abstract 18867; *General Aniline Works, Inc.* v. *United States*, 63 Treas. Dec. 1582, Abstract 24382; *McKesson Minneapolis Drug Co.* v. *United States*, 64 Treas. Dec. 996, Abstract 25642.

However, defendant would have the rule applied here in a manner which is deemed inconsistent with that basic principle. To illustrate, it appears from the record that the imported cod-liver oil was purchased at a price inclusive of the cost of the drums. The appraiser apparently accepted the cost price of new drums in Reykjavik, Iceland, which he returned as the export value. However, when the drums arrived in the United States they were no longer new drums. They had been filled with oil in Iceland and transported to New York without packing or protection of any kind. Hence, they could not on their arrival in this country be said to be new drums. Obviously, a new suit of clothes purchased in London and worn 6 or 7 days while crossing the Atlantic could not have the same value upon arrival at New York that it had when purchased.

Drums, being cylindrical vessels as described in paragraph 328, supra, were doubtless made dutiable "whether full or empty" as a protective measure, so that imported drums would have keener competition in this country with domestic drums of like character. In the following cases the courts have held that the separate dutiability of drums imported filled depended upon their commercial value for further use after the removal of their contents, which would determine whether or not they entered the competitive field with the domestic product: *United States* v. *Braun Chemical Co.*, 2 Ct. Cust. Appls. 57, T. D. 31596; *Colby & Co.* v. *United States*, 3 Ct. Cust. Appls. 234, T. D. 32542; *McKesson & Robbins (Inc.) et al.* v. *United States*, 61 Treas. Dec. 1417, Abstract 18867; *General Aniline Works, Inc.* v. *United States*, 63 Treas. Dec. 1582, Abstract 24382; *McKesson Minneapolis Drug Co.* v. *United States*, 64 Treas. Dec. 996, Abstract 25642.

An "empty" new drum, if imported, would of course be in an entirely different condition from the same drum if imported filled with merchandise. If the drums in controversy had been imported empty, it is fair to assume that they would have been packed with some protective material and that they would have reached the United States in substantially the same condition as when shipped from Iceland. Consequently, their value would have remained unchanged. It would seem highly inconsistent, therefore, to evaluate a full drum which has been used to transport merchandise from Iceland to New York at the same price as a new, unfilled drum, particularly so when it appears from the record that new drums are used for purposes which are not permitted for once-used drums. For instance, as disclosed by the record, it would not be permissible to employ a once-used drum for the transportation of medicinal cod-liver oil. Interstate Commerce Commission Regulations, p. 40, plaintiffs' exhibit 4, and report of Lincoln MacVeagh, American Minister to Iceland, defendant's exhibit 8.

It is noteworthy that certain of the drums in these importations, which were abandoned by the importers pursuant to section 506 of the Tariff Act of 1930, were valued by the appraiser at 50 cents each. For instance, in entry No. 764291, covered by reappraisement appeal 162243-A, it appears that out of 520 drums containing cod-liver oil, 250 drums were abandoned, and as to these drums, the record discloses that the appraiser returned a "domestic value" of $125 for the 250 drums that were abandoned, which would be the equivalent of 50 cents per drum. These drums were described as "in good condition." In entry No. 767462, covered by reappraisement appeal 162244-A, 260 drums out of 520 containing cod-liver oil were abandoned, and it appears from the official papers herein that the appraiser returned a "domestic value" of $130 for said 260 drums, which would

be the equivalent of 50 cents each, and that the said drums also were reported to be "in good condition."

It is perhaps a coincidence that the value of 50 cents per drum found by the appraiser for the abandoned drums during the period from 1941 to 1945 is the same as the United States value of such drums as will appear *infra*, while the appraised value of drums which were not abandoned was $8.37 per drum.

Inasmuch as the drums in controversy were appraised at the *cost* of new, unfilled drums in Iceland, which appraisement was on the basis of export value, it is my opinion, and I hold, that the appraisal herein was erroneous in that the appraiser pursued a wrong theory for valuation. Hence, his action was contrary to law and illegal. It follows, therefore, that the presumption of correctness which ordinarily attaches to the appraiser's action does not prevail.

In the light of the authorities to which reference has been made, the drums under consideration were for valuation and classification purposes potentially and constructively once-used drums, and the preponderance in the weight of evidence establishes that such drums had neither a foreign nor an export value in the country of exportation. An unsuccessful effort was made to prove a foreign value for used drums.

It is urged in the brief filed by defendant that "up to the time these drums and their contents were released from customs custody to the importer they had not been put to a second use"; that "they were not second-hand drums either at the time of exportation from Iceland or at the time of importation into this country"; that the "value in the United States of once used and emptied drums is not the kind involved in these cases"; and that "There is no evidence of a market for new, once filled drums when containing medicinal cod liver oil as we have before the Court." Nevertheless, with equal vigor defendant argues that the drums in their imported condition had an export value. It will prove interesting to analyze these contentions and pursue them to their logical conclusion.

If the drums in their imported condition cannot have a United States value, as contended by defendant, because they are filled with oil, it is difficult to understand how they can have an export value, as returned by the appraiser, when they are filled with oil. While it is true that new, unused, unfilled drums had an independent value when they were sold to the cod-liver oil merchant in Iceland, nevertheless, when the drums were filled with oil their value was absorbed by and merged into the value of the cod-liver oil so that, as between the exporter and the importers, the commercial transaction was confined solely to cod-liver oil.

The cost of new, unfilled drums in Iceland was stated on the consular invoices, doubtless for such information as it might convey to

the customs authorities in realization of the fact that drums become subject to duty upon arrival in the United States whether imported filled or empty.

In view of the decisions of the courts wherein drums containing certain materials were held to be free of duty because they were unfitted for use after their contents were removed and did not enter into commerce in competition with American drums, it is obvious that the courts must have considered the drums constructively or potentially as entities at the time of importation, regardless of their contents. *United States* v. *Braun Chemical Co.*, 2. Ct. Cust. Appls. 57, T. D. 31596; *General Aniline Works, Inc.* v. *United States*, 63 Treas. Dec. 1582, Abstract 24382; *A. Gash Refining Corp.* v. *United States*, 68 Treas. Dec. 297, T. D. 47890; *Wm. A. Foster & Co.* v. *United States*, id. 384, T. D. 47922.

Other instances may be cited where articles of importation must be disassembled in order that the value and dutiability of certain portions may be separately determined. For example, the leather bindings of books are separately dutiable from the printed pages even though neither the binding nor the printed pages have separate commercial values either in the country of exportation or in the United States. *United States* v. *John Wanamaker*, 20 C. C. P. A. (Customs) 381, T. D. 46185; *United States* v. *Malhame & Co. et al.*, 39 C. C. P. A. (Customs) 108, C. A. D. 472, affirming Reap. Dec. 7965, reported in 26 Cust. Ct. 558. Another instance is that of watches imported in folding leather cases, the leather cases being separately evaluated and classified for duty as provided in paragraph 1531 of said act. The watches are likewise disassembled for customs purposes and classified at the several rates applicable to cases and movements as provided in paragraph 367 (a) (1) and (f) of said act. *Concord Watch Co., Inc.* v. *United States*, 27 Cust. Ct. 57, C. D. 1348. See also *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 C. C. P. A. (Customs) 367, T. D. 46132.

In its supplemental brief, defendant makes the following contention:

Exhibit 11 indicates that the drums *per se* are the packing or containers of the cod liver oil imported therein and that there is no other packing. Export value provides that imported merchandise shall be dutiable, with a plusage—

\* \* \* when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The consular invoices in the case at bar show the actual cost of the involved drums. They were appraised at such cost in each case. They represented, as stated in Exhibit 11, the packing or containers for the cod liver oil imported therein and that there was no other packing. The appraiser did not advance the cost of the drums. This action fully meets the requirement of Section 402 (d) of the Tariff Act of 1930 defining export value.

This argument is untenable for the reason that I am not here concerned with the "cost" of containers within the meaning of section 402 (d) of the Tariff Act of 1930 but rather with the statutory value of certain drums having the status of imported merchandise separate and apart from their contents as contemplated by paragraph 328, *supra*. While said drums served as containers in fact for the imported cod-liver oil, their cost was merged in the cost or value of the oil, and, as between the exporter and the importers, the drums and oil did not have separate values but were treated as a single unit, namely, cod-liver oil in drums. Of course, in the absence of paragraph 328, *supra*, said drums as the usual containers of cod-liver oil, which latter is duty-free, would likewise have escaped duty.

It not being disputed that merchandise should be appraised in the condition in which imported and being of the opinion that it was error to appraise the imported drums containing cod-liver oil at the alleged export value or cost to the exporter of new, unfilled drums, the next inquiry is upon what statutory basis should the drums in their condition as imported be appraised.

In considering that question it becomes necessary to determine whether there was a foreign or export value for such or similar drums.

The uncontroverted evidence before me discloses that while there were some sporadic, occasional, infrequent, and inconsequential sales of once-used drums in Iceland for home consumption, there were no regular dealers nor a ready market for such articles. Hence, it cannot be said that such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade within the contemplation of section 402 (c) of the Tariff Act of 1930, *supra*. See the affidavits of Bernh. Petersen (plaintiffs' exhibit 5) and T. Thorbjarnarson (plaintiffs' exhibit 6) and the report of William C. Trimble, chargé d'affaires ad interim at Iceland (defendant's exhibit 10).

It follows that inasmuch as there were no regular dealers and no regular course of trade in the markets of Iceland for once-used drums there could be neither a foreign nor an export value for that commodity.

Is there then a United States value for the drums in controversy as contended by plaintiffs?

I am satisfied that the preponderant weight of the evidence establishes that at the time of exportation Newark, N. J., was the principal market in the United States for once-used drums of the kind here in controversy and that there were regular transactions in the ordinary course of trade in usual wholesale quantities to all purchasers during a period appropriate to the contested transactions and that the price did not vary with the quantity purchased. One witness (Lebowich)

purchased in the neighborhood of 100,000 drums annually, whereas another witness (Colville) purchased anywhere from 5,000 to 10,000 drums annually, the price prevailing from 1941 to 1945 being 45 or 50 cents per drum, and for the calendar year 1946, 60 cents per drum.

In answer to the contention of defendant that the drums in the condition as imported were not used drums but were drums filled with oil, it is sufficient to point out that witnesses called on behalf of plaintiffs testified that they bought the drums after importation, regardless of whether they were filled or empty, and that the price was the same in either event.

Obviously to conform to the requirement of paragraph 328, *supra*, in appraising an imported drum filled with a given commodity, it is necessary to regard the drum as an independent article of merchandise and that is precisely what the buyers in the American market did in making their purchases. It would create a patent absurdity to evaluate drums in the condition of the importations under consideration at the same value which would be found applicable to new, unused, unfilled drums.

One further matter which should receive consideration is the argument presented by the defendant based upon the contention that "This case is in all respects on all-fours with *C. H. Powell Co., Inc.*v. *United States*, Reap. Dec. 4685 affirmed in Reap. Dec. 4919, and affirmed in 28 C. C. P. A. (Customs) 310 [C. A. D. 160]."

A careful analysis of the opinion of the appellate court in the *Powell* case, *supra*, reveals vital factual distinctions from the case at bar. It appears that certain iron drums filled with olive oil in Greece were invoiced as new drums at 300 drachmas ($2.76) each, being the price paid by the importer and originally entered for consumption by the importer at that value. Subsequently, however, by an amended entry the drums were entered at 160 drachmas ($1.47) each as empty secondhand, uncleaned olive-oil drums. The drums were appraised at 300 drachmas each on the basis of foreign value of new drums.

In support of its contention that "The facts in the within case are no different from those in the *Powell* case" defendant quotes the following extract from the opinion of the appellate court in the latter case: "It clearly appears from the record, and it is conceded by counsel for appellant, that, at the time of their importation, the involved drums were being used for the first time as containers of olive oil. They were not, therefore, unfilled, once-used (second-hand), uncleaned metal drums, nor did they become such until the olive oil was removed therefrom sometime subsequent to their importation."

Further in its opinion, however, the court observed that "Assuming, for the purpose of this decision, that the involved drums are dutiable in accordance with their condition as imported and that, at the time

of their importation, they were less valuable than new, unfilled metal olive oil drums, as claimed by counsel for appellant; *nevertheless, there is no evidence of record as to the market value or price at which new metal drums filled with olive oil, being used for the first time as containers in the transportation of such oil and in the condition of those here involved at the time of their importation into the United States, were freely offered for sale or sold in the principal markets of Greece.*" [Italics supplied.]

Accordingly, the court concluded that "the presumed correctness of the value—300 drachmas each—found by the appraiser to be the foreign and dutiable value of the involved drums has not been overcome by the evidence of record."

The logical inference to be drawn from the opinion of the court above quoted is that had there been evidence of the market value of new metal drums filled with olive oil, used for the first time as containers in the transportation of such oil, and in the condition of the drums at the time of their importation, a different conclusion would have been reached.

In the case at bar, as pointed out, *supra*, there is uncontroverted evidence that drums (filled with cod-liver oil) in the condition of the imported drums under consideration were freely bought and sold in the principal market of the United States at a uniform price whether the drums were filled or empty.

The record before me, therefore, presents the issue in an entirely different light from that reviewed in the *Powell* case, *supra*, and while being in accord with the conclusion of the appellate court on the record in that case, the record now before me compels a different conclusion. While the *Powell* case, *supra*, was decided upon an apparent lack of evidence, the decision reached in the present case is based upon a full and complete record.

It is significant that subsequent to the decision of the appellate court in the *Powell* case, *supra*, the third division of this court, in deciding whether certain drums containing cod-liver oil were entitled to free entry as one-time shippers, held upon the evidence in said case as follows: "* * * such foreign drums are clearly intended to become dutiable upon the basis of their value at the time of importation in their filled condition. If the collector finds such drums capable of re-use when landed in the United States, they are dutiable unless it is established that they are within the exceptions noted in the foregoing decisions." *Thos. Cook & Son—Wagons-Lits, Inc.* v. *United States*, 9 Cust. Ct. 261, C. D. 705. Clearly this court receded from some of the views which it expressed earlier in the *Powell* case, 4 Cust. Ct. 852, Reap. Dec. 1919. In the cited cases, *supra*, where the courts have referred to the "condition" of drums at the time of importation, it is obvious that reference was made to the external condition of the

drums at the time when duty attached since the courts were not concerned with the contents of the drums.

The contention of defendant that there has been failure to establish the element of United States value which requires that there be sales in the United States of such or similar drums on the dates of exportation is refuted by ample proof that the market for drums like those in controversy was reasonably steady and constant throughout the period of these transactions. As stated by our appellate court in *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, 218, C. A. D. 274:

* * * the phrase "at the time of exportation" does not necessarily mean the hour or the day of exportation, but a time near enough to the date of exportation and under such circumstances as will reflect the price of the goods on the date of exportation. It is obvious that no definite period prior or subsequent to the exportation can be fixed as a standard for all cases. A fluctuating market, which might be brought about by many reasons, might make a date of sale or offer in this country prior or subsequent to the date of exportation an improper one to accept in determining the question here involved. On the other hand, the proof might show a steady, unvarying market or other conditions which would make a date months removed from the date of exportation a proper one to reflect what the price was on the date of exportation.

This principle was approved in *United States* v. *Robert Reiner, Inc.*, 35 C. C. P. A. (Customs) 50, 55, C. A. D. 370.

Defendant in its supplemental brief points out that "there was a maximum price in effect under the OPA" for empty drums or so-called secondhand containers and that "hence the market was to that extent controlled." No authorities are cited in support of that contention. This argument would seem to merit little consideration in view of the decision of the appellate court in *United States* v. *Michele Diagonale*, 22 C. C. P. A. (Customs) 517, T. D. 47497, in which it was held that where a foreign association of merchants offered a commodity for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade at a controlled price but imposed no restrictions on the use, disposition, or resale of such merchandise upon the purchasers thereof, it did not constitute such a controlled market in the sense that the price at which the merchandise was offered for sale in said market could not be considered in determining the foreign value of such merchandise under the provisions of section 402 (c) of the Tariff Act of 1930.

I have examined the elaborate record and briefs in this case with painstaking care and I am satisfied that the clear weight of competent evidence establishes the following facts:

1. The imported merchandise consists of steel drums imported filled with medicinal cod-liver oil.

2. The value of the cod-liver oil included the cost of the drums;

3. The drums were not separately purchased by the importers; neither were they separately commercially billed to the importers.

4. The drums as imported were no longer new, unused drums. They had served their purpose as containers of oil and had been subjected to the rigors of transportation and handling which materially affected their commercial value as drums.

5. There was neither a foreign nor an export value for said drums in their condition as imported on the dates of exportation.

6. There was a United States value for drums in the condition of said imported drums at the time of their exportation.

7. The principal market in the United States for said drums in the condition as imported was Newark, N. J.

8. The price of said drums did not vary with the quantity purchased.

9. The freely offered price for such drums in the condition as imported for domestic consumption, to all purchasers in the ordinary course of trade, was 50 cents per drum during the period from 1941 to 1945, inclusive, and 60 cents per drum during the calendar year 1946.

10. The importers waive and claim no allowance for cost of transportation, insurance, expenses from the place of shipment to the place of delivery, commission, profits, or general expenses, to which defendant agreed.

11. From the United States selling price as set forth in finding of fact number 9, *supra*, duty should be deducted.

I therefore conclude, as matter of law, upon this record that the proper basis of value for the imported drums in issue is United States value, as such value is defined in section 402 (e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (e)), and that such value is that set forth in findings of fact numbers 9 and 11, *supra*.

Judgment will be entered accordingly.