UNITED STATES *v.* E. R. SQUIBB & SONS, ET AL. (No. 4792)[1]

---

[1] C. A. D. 564

United States Court of Customs and Patent Appeals, May 27, 1954

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster*, special attorneys, of counsel), for the United States.
*Lane, Young & Fox* (*William Whynman* of counsel) for appellees.

[Oral argument April 6, 1954, by Mr. Auster and Mr. Whynman]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, entered pursuant to its decision, A. R. D. 29, which affirmed the judgment of the trial court entered by the single judge in a reappraisement proceeding, 28 Cust. Ct. 560, Reap. Dec. 8094. Six appeals for reappraisement were originally submitted for decision, enumerated below in "Schedule A," and all involved the identical issue. The appeals were accordingly consolidated for trial and decided as one case.

The judge sustained the contentions asserted there by appellees; namely, that there was neither a foreign nor an export value for the goods in issue, consisting of once-used steel drums, and that they were properly dutiable in their condition on the date of importation on the basis of United States value defined by section 402 (e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

The appellate division adopted the findings of fact made by the trial court, where it was established, among other things, that the drums, known as Iceland squat drums, having a capacity of 50 to 55 gallons, when imported were filled with duty-free, medicinal cod-liver oil which had been purchased on a gallon basis, with the drums in-

cluded in the price per gallon; that the drums were manufactured in Iceland and used there for the first time as containers for holding the imported oil; that they were not separately purchased by, nor commercially invoiced to, the importer; and that the cost of the drums to the exporter was separately stated on the consular invoices for convenience in customs administration.

Cod-liver oil is classified under paragraph 1730 (b) of the Tariff Act of 1930 and is duty free. Paragraph 328 contains this pertinent and applicable provision, however, for "cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; * * * 25 per centum ad valorem; * * *." The drums in issue were containers of the kind described in paragraph 328 and were advisorily classified for duty by the appraiser on the basis of export value defined by paragraph 402 (d).

The provision of the Act relating to the values above referred to read as follows:

Sec. 402. VALUE.

(a) Basis.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

\*      \*      \*      \*      \*      \*      \*

(c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) United States Value.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured other-

wise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

These additional findings of fact adduced from the evidence were described by the Customs Court:

The drums as imported were no longer new, unused drums. They had served their purpose as containers of oil and had been subjected to the rigors of transportation and handling which materially affected their commercial value as drums. There was neither a foreign nor an export value for said drums in their condition as imported on the dates of exportation. There was a United States value for drums in the condition of said imported drums at the time of their exportation. The principal market in the United States for said drums in the condition as imported was Newark, N. J. The price of said drums did not vary with the quantity purchased. The freely offered price for said drums in the condition as imported for domestic consumption, to all purchasers in the ordinary course of trade, was 50 cents per drum during the period from 1941 to 1945, inclusive, and 60 cents per drum during the calendar year 1946.

The appellate division added this pertinent observation:

In reappraisement 145139–A, there were 311 drums containing cod-liver oil valued at U. S. $700 per 1,000 kilos, and such value included the cost of the drums, stated upon the invoice as $5.15 each. Upon entry the nondutiable charges which were also included in the value of the oil were deducted. There was also deducted the sum of $1,290.65 from the value of the oil. This deduction was solely for the purpose of declaring the value of the dutiable drums at $1 each. The appraiser advanced the value of the drums from $1, as entered, to $5.15 each, which was equal to the cost of such drums, the proportionate part of which was included in the value per 1,000 kilos of the oil. The drums covered by the remaining reappraisements were shown upon the invoices to have cost U. S. $8.37 or $8.38 each, which cost was also included in the value of the oil. The claimed value thereof was $1 each, but entry was made at a value of $8.37 or $8.38 to meet advances by the appraiser.

The value found by the appraiser is presumed to be the value of the merchandise, and it was incumbent upon appellee, the party challenging the correctness of such value, not only to prove that the action of the appraiser was erroneous but also to establish affirmatively that a different dutiable value relied upon by appellee was the proper one. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495; *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502. The judgment of the Customs Court has held that appellee sustained this two-fold statutory burden.

The jurisdiction of this court in reappraisement cases is limited by the explicit terms of the statute to a review of the judgment of the Customs Court upon questions of law only,[1] and if it is determined here that the record contains substantial evidence to support the judgment appealed from, it must be affirmed. *Heller Deltah Co., Inc., et al.* v. *United States*, 39 C. C. P. A. (Customs) 101, 107, C. A. D. 471; *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 C. C.

[1] 28 U. S. C. § 2637.

P. A. (Customs) 86, 90, C. A. D. 468; *Mutual Supply Co.* v. *United States*, 38 C. C. P. A. (Customs) 44, C. A. D. 437; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436.

The record discloses that appeals for reappraisement were filed in this case as early as January 31, 1942, and that the case was pending and litigated before the tribunals of the Customs Court from June 17, 1947, until decided on July 8, 1953, when the judgment appealed from was rendered there. Six witnesses testified for appellee, the importer, and two for the Government. Six exhibits were entered and received in evidence in support of the importer's case and five were likewise submitted and considered by the court on behalf of the Government.

The evidence submitted here is contained in more than 100 pages of the printed record. Two painstaking, thoroughly enlightening decisions were written below, each of which exhaustively covered every aspect of the issues there presented. Both decisions, as the published reports disclose, include a proper interpretation and application of the involved statutes. To reproduce at length available excerpts from the testimony and the exhibits which verify that the judgment appealed from is supported by substantial evidence, would therefore involve unnecessary prolixity.

The appraiser's rebuttable presumption of correctness attaches only to the value returned by the appraiser, namely, export value. As to other values relied upon by the Government, its proof must be evaluated without benefit of any such presumption in its favor. That is an important consideration in this case in view of the requirement defined by section 402 (a), (1), and (2) of the Act whereby appellee must first establish that there is no foreign nor export value for the merchandise before a United States value may be adopted as a basis for appraisal.

In the tribunals below the trial judge effectively disposed of this issue, as thus reported:

In considering that question it becomes necessary to determine whether there was a foreign or export value for such or similar drums.

The uncontroverted evidence before me discloses that while there were some sporadic, occasional, infrequent, and inconsequential sales of once-used drums in Iceland for home consumption, there were no regular dealers nor a ready market for such articles. Hence, it cannot be said that such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade within the contemplation of section 402 (c) of the Tariff Act of 1930, *supra.* * * *

It follows that inasmuch as there were no regular dealers and no regular course of trade in the markets of Iceland for once-used drums there could be neither a foreign nor an export value for that commodity.

Appellant argues here, however, as it did before the appellate division, that the foregoing findings of fact upon which the trial

court based its holding was contrary to the weight of the evidence. The appellate division rejected that contention, and held:

> The evidence fully establishes that the drums in question, in the condition in which imported, at the time of exportation thereof, were not freely offered for sale in Iceland, either for home consumption or for export. There is a preponderance of evidence, however, establishing that there was a selling price for used drums in the United States in the usual wholesale quantities and in the ordinary course of trade. In the absence of a foreign or export value, such United States value should prevail.

This court finds upon a careful analysis of the record that there is substantial evidence to support the decision of the lower tribunals which concurrently held that there was no foreign nor export value for the merchandise in issue. Furthermore, under its limited jurisdiction in a reappraisement proceeding, weighing evidence susceptible to more than one interpretation to determine the preponderance thereof as to the ultimate fact in issue is a function which this court has no authority to exercise. *Brooks Paper Company* v. *United States, supra; United States* v. *Henry W. Peabody*, 40 C. C. P. A. (Customs) 59, 65, C. A. D. 498; *United States* v. *International Forwarding Co., supra.*

The volume of evidence submitted by appellees in support of their assertion of United States value is clear, substantial and convincing. Furthermore, the cases cited here and in the Customs Court on behalf of the Government are inapposite and nowise controlling of the issues presented.

For the reasons set forth above, the judgment of the appellate division of the United States Customs Court is hereby *affirmed.*

GARRETT, Chief Judge, because of illness, did not participate in this case.