(A. R. D. 29)

UNITED STATES *v.* E. R. SQUIBB & SONS ET AL.

Entry No. 736359, etc.

Third Division, Appellate Term

(Decided July 8, 1953)

*Warren E. Burger,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.
*Lane, Young & Fox* (*William Whynman* of counsel) for the appellees.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is an application for review of the decision and judgment of the trial court reported in 28 Cust. Ct. 560, Reap. Dec. 8094, involving steel drums which were imported as containers of cod-liver oil, imported from Iceland. Said application covers appeals listed in schedule "A," hereto attached and made a part hereof. In reappraisement 145139–A, there were 311 drums containing cod-liver oil valued at U. S. $700 per 1,000 kilos, and such value included the cost of the drums, stated upon the invoice as $5.15 each. Upon entry, the nondutiable charges which were also included in the value of the oil were deducted. There was also deducted the sum of $1,290.65 from the value of the oil. This deduction was solely for

(445)

the purpose of declaring the value of the dutiable drums at $1 each. The appraiser advanced the value of the drums from $1, as entered, to $5.15 each, which was equal to the cost of such drums, the proportionate part of which was included in the value per 1,000 kilos of the oil. The drums covered by the remaining reappraisements were shown upon the invoices to have cost U. S. $8.37 or $8.38 each, which cost was also included in the value of the oil. The claimed value thereof was $1 each, but entry was made at a value of $8.37 or $8.38 to meet advances by the appraiser.

The trial court found from the evidence adduced that inasmuch as steel drums are dutiable separately from their contents, they are accordingly separately subject to appraisement in the condition imported. The trial court further found that there was neither a foreign nor an export value for such drums in their imported condition and held that appraisement should be made upon the basis of the United States value of secondhand drums. The court further found that drums, in the condition of the instant drums, were freely offered for sale in the principal market of the United States to all purchasers, at the time of exportation of the imported drums, in the usual wholesale quantities and in the ordinary course of trade, at 50 cents per drum during the period from 1941 to 1945, inclusive, and 60 cents per drum during the calendar year 1946. From such prices, duty should be deducted.

The Government contends in its application for review that the trial court erred in 39 different counts, many of which are repetitious to a certain extent. We set out said statement of errors as follows:

1. In finding and holding and in entering judgment adjudging that United States value, as defined in Section 402 (e), Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the involved merchandise, and that such value is 50 cents per drum during the period from 1941 to 1945, inclusive, and 60 cents per drum during the calendar year 1946, with an allowance for duty in each case.

2. In not finding and holding and in not entering judgment adjudging that foreign value and/or export value, as defined in Section 402 (c) and (d) of said Act, is the proper basis for the determination of the value of the involved merchandise, and that such value is the appraised value in each case.

3. In effect, finding and holding that it is the condition of the involved drums at the time of their arrival in the United States which must be considered in determining their market value for duty purposes, and in not finding and holding to the contrary.

4. In not finding and holding that the condition of the involved drums, at the time of their arrival in the United States, need not be considered in determining their market value for duty purposes because it is the *cost* thereof at the time of exportation in the country of exportation which determines their cost or value under the provisions of Section 402 (c) and (d) of said Act.

5. In not finding and holding that the "basic" and "fundamental" principle stated by the court as,—

\* \* \* that it is the condition of merchandise at the time it arrives in this country which must be considered not only in determining its dutiable classification but, as well, its dutiable valuation

is not applicable to the involved drums because they are the usual containers for the imported oil, and it is

\* \* \* the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

as defined in Section 402 (c) and (d) of said Act which makes said drums subject to duty at such cost on the basis of paragraph 328 of said Act, at 25 per centum ad valorem.

6. In not finding and holding that the provisions of paragraph 328 of said Act, which provides for,—

\* \* \* cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; \* \* \* 25 per centum ad valorem; \* \* \*

only sets the *rate* at which full or empty drums are subject to duty, and that it does not require the determination of value of such drums to be made based upon their condition at the time of arrival in the United States.

7. In finding and holding that:

\* \* \* when the drums arrived in the United States they were no longer new drums. They had been filled with oil in Iceland and transported to New York without packing or protection of any kind. Hence they could not on their arrival in this country be said to be new drums. \* \* \*

8. In not finding and holding that it is immaterial whether, upon arrival in the United States, they were new drums or once-used drums because paragraph 328 holds them dutiable "whether full or empty", and as a container of medicinal oil it was their cost at the time of exportation, under Section 402 (c) and (d) of said Act, that are involved.

9. In finding and holding, in effect, that it would be improper,—

\* \* \* to evaluate a full drum which has been used to transport merchandise from Iceland to New York at the same price as a new, unfilled drum, particularly so when it appears from the record that new drums are used for purposes which are not permitted for once-used drums.

10. In not finding and holding that it would be proper and legal to evaluate a full drum which has been used to transport merchandise from Iceland to New York at the same price as a new unfilled drum, by reason of the provisions of paragraph 328 and Section 402 (c) and (d) of said Act, though it appears from the record that new drums are used for purposes which are not permitted for once-used drums.

11. In giving weight to the Appraiser's return of value of other drums in two of these importations, which drums were abandoned by the importer pursuant to Section 506 of said Act.

12. In finding and holding that,—

\* \* \* Inasmuch as the drums in controversy were appraised at the *cost* of new, unfilled drums in Iceland, which appraisement was on the basis of export value, it is my opinion, and I hold, that the appraisal herein was erroneous in that the appraiser pursued a wrong theory for valuation. Hence his action was contrary to law and illegal. It follows, therefore, that the presumption of correctness which ordinarily attaches to the appraiser's action does not prevail.

13. In not finding and holding that the appraisal herein was not erroneous and that the action of the Appraiser was not contrary to law and was, therefore, legal, and that the presumption of correctness attaching to the Appraiser's finding of value prevails and was not overcome.

14. In finding and holding that,—

* * * the drums under consideration were for valuation and classification purposes potentially and constructively once-used drums, and the preponderance in the weight of evidence establishes that such drums had neither a foreign nor an export value in the country of exportation. * * *

15. In not finding and holding that the drums under consideration were not, for valuation and classification purposes, potentially and constructively once-used drums, but were new drums, and that the preponderance in the weight of the evidence establishes that such drums had a foreign value and/or export value in the country of exportation equal to the actual amount of the cost of such drums as determined by the appraiser in each case.

16. In not finding and holding that the drums, in their condition as imported, could not properly be valued on the basis of United States value for the reason that such drums were not sold in the United States as "drums of oil," in which condition they were imported, and in which manner they were sold for exportation to the United States, though the cost of the drums were absorbed by and carried into the purchase price of the cod-liver oil.

17. In not finding and holding that because the value of the drum, as such, was absorbed by and carried into the purchase price of the cod-liver oil, it was the equivalent of the exporter selling the drums, as such, to the importer at the exporter's cost, and the value at which such drums were being freely offered for sale for home consumption and for export to the United States in the same manner as any other packing would be invoiced and/or charged.

18. In not finding and holding that it is a reasonable inference that had the importer purchased these drums directly from the manufacturer thereof at the latter's freely offered price and statutory foreign value, in the amounts as stated in the invoice herein, and then supplied these drums to the manufacturer and shipper of the oil, that the purchase price for the oil, as such, would have been reduced to the extent of such cost to the importer of such drums.

19. In not finding and holding that the involved drums are the usual containers for the imported oil and are, dutiable, filled or empty, at the price at which such or similar drums were freely offered for sale for home consumption or for export to the United States to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at the time of exportation thereof, or at the actual cost thereof, pursuant to Section 402 (c) and (d) of said Act.

20. In finding and holding,—

* * * that I am not here concerned with the "cost" of containers within the meaning of section 402 (d) of the Tariff Act of 1930 but rather with the statutory value of certain drums having the status of imported merchandise separate and apart from their contents as contemplated by paragraph 328, *supra*. * * *

21. In not ascertaining the cost of these drums for duty purposes as the usual containers of the imported oil, as such cost is a charge or expense incident to placing the said oil in condition, packed ready for shipment to the United States, especially because the court did hold that,—

\* \* \* in the absence of paragraph 328, *supra,* said drums as the usual containers of cod-liver oil, which latter is duty-free, would likewise have escaped duty.

22. In finding and holding that,—

\* \* \* it was error to appraise the imported drums containing cod-liver oil at the alleged export value or cost to the exporter of new, unfilled drums, \* \* \*

and in not finding and holding that it was not error so to do, or to determine their actual cost for duty purposes.

23. In not finding and holding that Congress intended, by said paragraph 328, that filled drums such as are here involved and such empty drums should be classified thereunder and appraised at their market value, if empty, and at their actual cost if full when used as the usual containers, and to put the contents in condition packed ready for shipment to the United States, under Section 402 (c) and (d) of said Act.

24. In finding and holding that the involved drums are "once-used drums," and in not finding and holding that "once-used drums" are drums emptied after their first use, and that the involved drums were not imported after their first use.

25. In finding and holding that,—

The uncontroverted evidence before me discloses that while there were some sporadic, occasional, infrequent, and inconsequential sales of once-used drums in Iceland for home consumption there were no regular dealers nor a ready market for such articles. \* \* \*

and in not finding and holding to the contrary.

26. In finding and holding that such or similar "once-used drums" were not,—

\* \* \* freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade within the contemplation of section 402 (c) of the Tariff Act of 1930, \* \* \*

and in not finding and holding to the contrary.

27. In not finding and holding that it was immaterial in the instant case that there were no regular dealers and no regular course of trade in the markets of Iceland for once-used drums and, hence, neither a foreign nor an export value for that commodity.

28. In finding and holding that a statutory United States value existed for "once-used drums of the kind here in controversy," at 50 cents per drum during 1941 to 1945, inclusive, and at 60 cents per drum during 1946, and that the said United States value for once-used drums is applicable to the imported drums with allowance for duty in each case.

29. In finding and holding that,—

\* \* \* witnesses called on behalf of plaintiffs testified that they bought the drums after importation regardless of whether they were filled or empty and that the price was the same in either event. \* \* \*

without also finding and holding that *delivery* was never made of said drums when filled with medicinal cod-liver oil such as was contained in the drums under consideration at the time of importation.

30. In finding and holding,—

\* \* \* It would create a patent absurdity to evaluate drums in the condition of the importations under consideration at the same value which would be found applicable to new, unused, unfilled drums.

and in not finding and holding that Congress intended, by the provisions of paragraph 328 and Section 402 (c) and (d) of said Act,—

* * * to evaluate drums in the condition of the importations under consideration at the same value which would be found applicable to new, unused, unfilled drums.

31. In finding and holding that,—

* * * The logical inference to be drawn from the opinion of the court above quoted [*Powell* v. *United States*, 28 C. C. P. A. 310] is that had there been evidence of the market value of new metal drums filled with olive oil, used for the first time as containers in the transportation of such oil, and in the condition of the drums at the time of their importation, a different conclusion would have been reached.

and in not finding and holding that the court there merely showed another reason why, in any event, the conclusion there reached would follow.

32. In not finding and holding that it was not material in this case that evidence,—

* * * that drums (filled with cod-liver oil) in the condition of the imported drums under consideration were freely bought and sold in the principal market of the United States at a uniform price whether the drums were filled or empty. * * * [*sic*]

because the right of the purchaser to carry away and dispose of the *filled* drums did not exist at the time of any of the alleged sales but delivery was conditioned upon the oil being first removed.

33. In finding and holding that,—

* * * The record before me, therefore, presents the issue in an entirely different light from that reviewed in the *Powell* case, *supra*, and while being in accord with the conclusion of the appellate court on the record in that case, the record now before me compels a different conclusion. While the *Powell* case, *supra*, was decided upon an apparent lack of evidence, the decision reached in the present case is based upon a full and complete record.

34. In not finding and holding that the record herein does not establish all the elements of Section 402 (e) of the Tariff Act of 1930 for the involved drums, and, hence, no statutory United States value has been established.

35. In not finding and holding that a statutory foreign value and export value existed for the involved drums.

36. In finding and holding that the involved drums

* * * had served their purpose as containers of oil and had been subjected to the rigors of transportation and handling which materially affected their commercial value as drums.

and in not finding and holding that their commercial value as drums, upon importation, was not material to the issues herein.

37. In finding and holding that,—

* * * There was neither a foreign nor an export value for said drums in their condition as imported on the dates of exportation.

and in not finding and holding that this was not material to the issue.

38. In finding and holding,—

* * * There was a United States value for drums in the condition of said imported drums at the time of their exportation.

39. In finding and holding,—

　　* * * The principal market in the United States for said drums in the condition as imported was Newark, New Jersey.

The statutory provisions attending the valuation of imported merchandise, 19 U. S. C. § 1402 (c) (d) and (e), provide as follows:

Sec. 402.　Value.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

(c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) United States Value.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The plaintiffs' exhibits included drums covered by the reappraisements, exhibit 1 being typical of all the drums, the remainder being withdrawn with consent of the court; also three affidavits and a pamphlet known as Freight Tariff No. 4 of the Interstate Commerce Commission.　In addition, six witnesses testified on behalf of the plaintiffs.　The Government presented four exhibits, including a report of the American Minister to Iceland, a joint report of Customs Agent Cristides and Examiner Taylor, a report of William C. Trimble, chargé d'affaires ad interim in Iceland, and the evidence of two witnesses.　From the evidence presented, the court stated:

The uncontroverted evidence before me discloses that while there were some sporadic, occasional, infrequent, and inconsequential sales of once-used drums in Iceland for home consumption, there were no regular dealers nor a ready market for such articles.　Hence, it cannot be said that such or similar merchandise was

freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade within the contemplation of section 402 (c) of the Tariff Act of 1930, *supra*. See the affidavits of Bernh. Petersen (plaintiffs' exhibit 5) and T. Thorbjarnarson (plaintiffs' exhibit 6) and the report of William C. Trimble, chargé d'affaires ad interim at Iceland (defendant's exhibit 10).

It follows that inasmuch as there were no regular dealers and no regular course of trade in the markets of Iceland for once-used drums there could be neither a foreign nor an export value for that commodity.

Is there then a United States value for the drums in controversy as contended by plaintiffs?

I am satisfied that the preponderant weight of the evidence establishes that at the time of exportation Newark, N. J., was the principal market in the United States for once-used drums of the kind here in controversy and that there were regular transactions in the ordinary course of trade in usual wholesale quantities to all purchasers during a period appropriate to the contested transactions and that the price did not vary with the quantity purchased. One witness (Lebowich) purchased in the neighborhood of 100,000 drums annually, whereas another witness (Colville) purchased anywhere from 5,000 to 10,000 drums annually, the price prevailing from 1941 to 1945 being 45 or 50 cents per drum, and for the calendar year 1946, 60 cents per drum.

The appellant contends that the evidence establishes that empty, new Icelandic drums are freely sold to all buyers in Iceland at the prices shown upon the invoices, which prices represent the appraised values, and that such prices are applicable to home consumption sales as well as to export sales in Iceland and, therefore, such prices represent the foreign as well as the export value of the merchandise.

Government counsel admits that the appraiser based his value on the cost of the drums to the shipper and that such cost was the price of the new and unused drums which the shipper filled with cod-liver oil for the first time. He also admitted that the shipper who bought the new drums was in the business of shipping cod-liver oil and not drums and that each gallon of oil imported included therein the proportionate cost of the drum in which it was contained. Cod-liver oil is on the free list as a duty-free item and would carry its container duty free were it not for the provisions of paragraph 328 of the Tariff Act of 1930 requiring that duty be assessed upon—

cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; * * * 25 per centum ad valorem; * * *

thus making iron drums dutiable, whether imported full of merchandise, as containers, or imported empty.

In providing for the assessment of duty on containers, there is nothing in the law which in any manner indicates that such drums should not be treated in a manner similar to other dutiable merchandise.

Merchandise imported into the United States is dutiable in the condition it arrives in the United States. *American Sugar Refining*

*Co.* v. *United States*, 181 U. S. 610. It is also dutiable upon the basis of value as defined in section 402, *supra*. If Congress had contemplated that the duty provided for in the act should be assessed upon the basis of the cost of the container to the shipper of the merchandise contained therein, rather than upon the value of the drum at the time of shipment (and that does not mean the time the drums were purchased new by the shipper), it could very well have so indicated. Therefore, the cost of the new drums is not a criterion of the dutiable value thereof, particularly when a value under section 402, *supra*, has been otherwise fully established.

The evidence fully establishes that the drums in question, in the condition in which imported, at the time of exportation thereof, were not freely offered for sale in Iceland, either for home consumption or for export. There is a preponderance of evidence, however, establishing that there was a selling price for used drums in the United States in the usual wholesale quantities and in the ordinary course of trade. In the absence of a foreign or export value, such United States value should prevail.

When the value of drums is the issue before the court, it becomes necessary to disregard the contents thereof, or consider the fact that they are containers of the merchandise sought to be imported. There is no appraisement of the contents *per se* and, therefore, the cost of containers is not at issue. The only inquiry before the court is: What is the value of these drums in their condition as imported at the time of their exportation from Iceland?

In the case of *F. Zito Scalici* v. *United States*, Reap. Cir. 27536, cited by appellant, the value of certain boxes containing lemons was involved. The claim was there made that the lemon boxes were secondhand and that they, therefore, should not have been appraised as new boxes. The Tariff Act of 1913 assessed duty upon "Boxes * * * containing * * * lemons." Empty boxes would not have been dutiable under the paragraph in question. In the pending case, drums are made dutiable, whether filled or empty, and there is nothing in the act to indicate that the general rule as to the condition of the article would not apply upon importation of such drums.

With the exception of the case of *C. H. Powell Co., Inc.* v. *United States*, Reap. Dec. 4685, affirmed in Reap. Dec. 4919, and in 28 C. C. P. A. (Customs) 310, C. A. D. 160, none of the other cases cited by the Government are in point, as they dealt with the classification of drums under paragraph 328, *supra*, and not with the value thereof. In the *Powell* case, *supra*, the importer purchased the drums and then filled them with olive oil. The appellate division of this court stated that Congress intended that drums imported empty as merchandise should be dutiable upon the basis of the foreign or export value thereof

at the time of shipment, while drums imported as containers should be dutiable upon the basis of their cost. One member of the division, however, was of the opinion that the drums were separately dutiable at 25 per centum ad valorem, and not at 25 per centum of their cost, and concurred in the result. The appellate court agreed with the opinion of the concurring judge. It was there contended, however, that the drums should have been appraised in accordance with their imported condition, but the court pointed out that there was no evidence of record as to the market value or price at which new, metal drums, filled with olive oil, being used for the first time as containers in the transportation of such oil and in the condition of those there involved at the time of their importation into the United States, were freely offered for sale or sold in the principal markets of Greece. No claim was there made that the drums were dutiable at their United States value, nor was evidence of a United States value presented to the court. In view of the record, the court held that the presumption of correctness of the appraiser's finding had not been overcome. There is no merit, therefore, to appellant's contention that—

* * * Congress intended by said paragraph 328 that filled drums, such as are here involved, and such empty drums, should be classified thereunder and appraised under Section 402 (c) and (d) at their market value if empty, and at their actual cost if full, when used as the usual containers, thus placing the contents in condition packed ready for shipment to the United States.

A consideration of the record, in our opinion, substantiates statements made in the opinion of the trial court that sales of once-used drums in Iceland were sporadic, occasional, infrequent, and inconsequential, and that there is no evidence of a substantial number of sales either for home consumption or for export.

It is clear that the shipper of the cod-liver oil in question did not sell these drums to the importers. Purchase was made by the shipper of new drums from drum manufacturers in Iceland. The shipper used such drums to contain cod-liver oil, which was sold to the importers herein. At the time of shipment, therefore, they were used drums. Their value as new drums had been destroyed when filled with the merchandise the subject of purchase and sale.

Counsel for the appellant argues that the appraised values represent the invoiced values, and the cost, as well as the freely offered price for home consumption or for export to the United States. Consequently, it is contended that the appraiser did not pursue a wrong theory of law in the valuation, and his action is neither illegal nor contrary to law, and thus the presumption of correctness of the appraiser's action has not been overcome.

The error of appellant's argument is, first, that the cost of the drums, as included in the value of the contents, is mistaken for the

invoice value, and second, overlooking or disregarding the fact that the exporter bought these drums in Iceland as new drums and did not invoice nor sell them to the appellees but, on the other hand, filled them with cod-liver oil (thus changing the condition thereof from new unused drums to used drums) and in such condition exported them to the United States. This changed condition, however, is later admitted by the appellant in Government's brief as follows:

* * * The "condition" of the drums in controversy when ready for shipment in Iceland to the United States and upon arrival in the United States, was that they were *filled with medicinal cod-liver oil*. They were not empty drums. [Italics quoted.]

We are of opinion that the drums became used drums rather than new drums when the cod-liver oil was placed therein by the shipper. Therefore, they were used drums at the time of exportation. They were used drums at the time of importation, although in a somewhat battered condition. At the time of shipment from Iceland, such used drums were freely offered for sale in the principal market in the United States at the prices found by the trial court. It would be unconscionable to appraise drums in their condition as imported as though they were new, unused drums when, as a matter of fact, they were neither new and unused either at the time of exportation from Iceland or at the time of importation into the United States. It is the opinion of this court that the price placed by the appraiser upon the drums abandoned to the Government more nearly reflects the proper value thereof than the cost of a new, unused drum at which the instant drums were appraised.

From a careful examination of the record and briefs of counsel, we are of the opinion that the facts are as found by the trial court which we set out as follows:

1. The imported merchandise consists of steel drums imported filled with medicinal cod-liver oil.

2. The value of the cod-liver oil included the cost of the drums.

3. The drums were not separately purchased by the importers; neither were they separately commercially billed to the importers.

4. The drums as imported were no longer new, unused drums. They had served their purpose as containers of oil and had been subjected to the rigors of transportation and handling which materially affected their commercial value as drums.

5. There was neither a foreign nor an export value for said drums in their condition as imported on the dates of exportation.

6. There was a United States value for drums in the condition of said imported drums at the time of their exportation.

7. The principal market in the United States for said drums in the condition as imported was Newark, N. J.

456

8. The price of said drums did not vary with the quantity purchased.

9. The freely offered price for such drums in the condition as imported for domestic consumption, to all purchasers in the ordinary course of trade, was 50 cents per drum during the period from 1941 to 1945, inclusive, and 60 cents per drum during the calendar year 1946.

10. The importers waive and claim no allowance for cost of transportation, insurance, expenses from the place of shipment to the place of delivery, commission, profits, or general expenses, to which defendant agreed.

11. From the United States selling price, as set forth in finding of fact number 9, *supra*, duty should be deducted.

From such findings of fact, it is the conclusion of this court, as matter of law, that the proper basis of value for the imported drums in question is the United States value, as such value is defined in section 402 (e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (e)), and that such value is set forth in findings of fact numbers 9 and 11, *supra*.

Judgment will therefore be entered affirming the decision of the trial court.