**The UNITED STATES, Appellant,**

v.

**ARNOLD PICKLE & OLIVE CO., Appellee.**

**Appeal No. 81–3.**

United States Court of Customs and Patent Appeals.

Sept. 17, 1981.

Rehearing Denied Nov. 5, 1981.

---

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Atty. in Charge, Sidney N. Weiss and John J. Mahon, New York City, of counsel, for appellant.

Robert Glenn White, Los Angeles, Cal., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from the judgment of the United States Customs Court (now the United States Court of International Trade), —— Cust.Ct. ——, C.D. 4868, 506 F.Supp. 647 (1980), which held that appellee had shown error in the basis used by the Government to appraise cucumbers in brine imported by appellee from Mexico and, further, had proved an "export value" [1] for the imported merchandise based on prices paid independent farmers in Mexico for fresh

1. As defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. See footnote 5, infra, for text.

cucumbers plus packing costs. Costs incurred from immersion in brine during shipment were treated as part of appellee's packing costs. We reverse.

### Background

This case is the second case decided by the court below concerning the appraisement of pickle-type cucumbers [2] imported from Mexico in brine by Arnold Pickle & Olive Co. (Arnold). In the first case, *Arnold Pickle & Olive Co. v. United States*, 75 Cust.Ct. 154, C.D. 4620 (1975), (hereinafter referred to as *Pickle I*) seven entries of such cucumbers, imported in May 1971, were involved. In this case 100 entries, made over a seven month period in 1971, are at issue.[3]

In *Pickle I* the court held that an "export value" based on the price at which sales were made to Arnold by a Mexican company, Pickle-Mex, presumed to have been the basis for evaluating the goods used by the appraiser, was erroneous. Pickle Mex was found to have acted as an agent or alter ego for Arnold,[4] purchasing goods for Arnold in Mexico and preparing them for shipment. Thus, despite invoices showing sales prices, the court found no bona fide sales between the two companies. The Government then argued that the only other appropriate basis for determining an "export value" was a sale of cucumbers in brine to a third party by Pickle-Mex, but because there was only a single sale the court was not persuaded that it should serve as an export value. The court adopted Arnold's view that § 402(b) [5] allowed an "export value" to be based on the price at which independent farmers sold *fresh* cucumbers to Pickle-Mex plus costs of packing them for shipment, which included the cost of immersion in brine, rejecting the Government's argument that this approach was a distortion of "export value" into "constructed value." [6]

The immersion process was effected by loading the cucumbers together with water and salt (and in some instances also ice) into a polyethylene liner in a truck. The court found that the "method of transportation did not advance the cucumbers towards 'pickleness' but did increase their salt content." (75 Cust.Ct. at 157.) The court concluded:

> When a particular type of packing is named in the tariff description I consider it a proper interpretation of section 402(b) to allow proof of the cost of pack-

2. The raw cucumbers are identified as "pickle-type" by the parties, apparently not being suitable for other purposes.

3. There is no dispute concerning classification on any of these entries. The goods are classified under item 141.75 of the Tariff Schedules of the United States (TSUS) which covers

   Vegetables
   Other
   141.75 Packed in salt, in brine, or pickled.

4. During the first trial evidence was introduced that Arnold, the importer, and Pickle-Mex, the exporter, were closely related partnerships. Byron Arnold, Jr., testified he was a partner in Pickle-Mex and general manager of Arnold, the partners of which were close relatives of his. Pickle-Mex grew approximately 70% of its own cucumbers in 1971 and the other 30% was purchased from independent growers. Gus Armado testified that he was employed by both Arnold and Pickle-Mex for his work in Mexico, Arnold paying for the work related to growing cucumbers. Pickle-Mex did the inspecting, grading, and immersion in brine of the cucumbers. Although invoices made out to Arnold accompanied each entry stating prices for the merchandise, payment was not made per invoice but instead Arnold advanced money to Pickle-Mex at various times and a settlement was made at the end of the year.

5. Section 402(b) of the Tariff Act of 1930, as amended (19 U.S.C. § 1401a(b), reads:

> For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

6. A constructed value is only to be used for appraisement if there is no export value or United States value. 19 U.S.C. § 1401a(a).

ing as an addition to the export price of the basic article even though as a strictly technical matter the merchandise undergoing appraisement is the combination of basic article and packing. I see this as a lesser anomaly than the alternative conclusion that an article which in all other respects has an export price cannot have an export value because it is packed for export by a party which does not sell it for export. Thus, overriding considerations of fairness would lead me, in the present circumstances, to find an export value in the export price of the cucumbers plus the cost of their packing. [75 Cust.Ct. at 157.]

■■■ While appellee was thus successful in theory, nevertheless, it lost the battle. A plaintiff challenging appraisement not only must show that the Government was wrong, but also must prove the correct value. By failing to submit proof of inspecting and grading costs, part of the readying and packing costs, Arnold did not prove the export value it claimed, and the appraised value remained in effect.

Arnold did not appeal that judgment and the Government was not in a position to do so. Arnold then instituted this action and concurrently filed a motion for partial summary judgment on the ground that the basis for valuation was established in *Pickle I*. The Government countered by moving for judgment on the pleadings, asserting that *Pickle I* created a collateral estoppel which precluded appellee from relitigating appraisement of the same type of merchandise.

The court granted Arnold's motion for partial summary judgment (*Arnold Pickle & Olive Co. v. United States,* 79 Cust.Ct. 50, C.D. 4712 (1977)); the record of *Pickle I* was incorporated on appellee's motion; and all costs established in the first case were carried forward. Only the costs of inspection and grading, the missing elements of proof in the first case, required proof in the second trial.

The Government's motion for judgment on the pleadings was denied. The court did not consider the judgment against Arnold in *Pickle I* a proper basis for estoppel in this case inasmuch as there was no "precise determination in [the Government's] favor on the issue of valuation."

At the trial, the court determined that this time Arnold proved its total packing costs and that the claimed export value was thus fully established. Judgment was entered for Arnold.

The Government advances three grounds for reversal: (1) the price of fresh cucumbers does not constitute an "export value" exclusive of packing costs within the meaning of § 402(b) for cucumbers in brine; (2) appellee is precluded by principles of collateral estoppel from relitigating correct export values for the same type of merchandise considered in *Pickle I*; and (3) in any event, appellee failed to prove the costs of packing.

Because the first ground necessitates reversal, we do not reach the other issues.

## OPINION

A dual burden of proof is imposed on one challenging the validity of the valuation at which imported merchandise has been appraised. The challenger must not only overcome the presumption of correctness attaching to the appraised value but also must establish the correctness of the alternative value being proposed.[7] *Dana Perfume Corp. v. United States,* 63 CCPA 43, 524 F.2d 750 (1975); *H. S. Dorf & Co. v. United States,* 41 CCPA 183, C.A.D. 548 (1954). In this case Arnold must show (1) that "sales" between Arnold and Pickle-Mex do not provide an "export value" within the meaning of § 402(b) and (2) that an "export value" may properly be based on sales of fresh cucumbers, as asserted.

■■■ The amount of duty on appellee's imported merchandise is fixed by a rate determined by the classification under

---

7. Under the changes made by the Customs Court Act of 1980, 28 U.S.C. § 2643(b), cases where appraisement has been proved to be erroneous may now be retried or reheard in appropriate circumstances.

which the merchandise falls, that rate then being applied to the "value" of the merchandise, that is, its appraisement. This case presents only an appraisement question since neither party questions classification. Nevertheless, as an initial matter, it is appropriate to clarify the identification of the merchandise for *classification* purposes. Vegetables covered by item 141.75, TSUS, are "Other: Packed in salt, in brine, or pickled." The court below and the parties have referred to this item as covering "vegetables, *packed* in brine." [Emphasis added.] However, this reading of the statute is incorrect. The words "in brine" are not appended to the word "packed." "Packed in salt," "in brine," and "pickled" are the three categories in item 141.75, TSUS. Thus, the goods here are "Vegetables, Other, . . . in brine," and appellee's goods will be referred to herein, where appropriate, as "cucumbers in brine." [8]

### "Imported Merchandise" Under Section 402(b)

Section 402(b) provides (in pertinent part) that "the export value of *imported merchandise* shall be the price . . . at which *such* or *similar* merchandise is freely sold . . ." [emphasis added] [9] plus the costs of readying the goods for shipment, if not included. Valuation under § 402(b) is a multi-step process, the first step being to determine what the "imported merchandise" is. Only after this question is answered are we in a position to decide whether there is an export value for the goods based on sales of such or similar merchandise. [10]

Appellee maintains, and the court below agreed, that the basic article imported (i. e., the "imported merchandise") is pickle-type cucumbers, the particular packing being immaterial. This position focuses on the evidence that pickle-type cucumbers, whether shipped in brine or not, are used for the same purpose after importation and are processed into pickles in the same way.

The Government, on the other hand, argues that immersion in brine alters the physical condition of the cucumbers. At the time of importation, therefore, the goods were no longer *fresh* cucumbers. Accordingly, the Government contends the court below erred in its holding that fresh cucumbers were the basic article imported.

■ It is well settled that the condition of merchandise at the moment of importation establishes the basis for appraisement, that is, determines what the "imported merchandise" is under § 402(b). *United States v. Joseph Fischer*, 32 CCPA 62, 67, C.A.D. 286 (1944).

In *E. R. Squibb & Sons v. United States*, 28 Cust.Ct. 560, R.D. 8094 (1952), *aff'd* 31 Cust.Ct. 445, A.R.D. 29 (1953), *aff'd* 42 CCPA 23, C.A.D. 564 (1954), which raised a similar issue of what was the condition of the goods as imported, new drums had been filled with cod-liver oil and were imported containing the oil. Although the contents entered free, the drums were separately subject to duty and, thus, separately appraised. The Government sought to appraise them as new drums. It was held that having been filled with oil, the drums no longer were new or unused at the time of importation and should have been appraised on the basis of the value for drums in their condition *as imported*, i. e., used drums.

Appellee cites *United States v. Arkell Safety Bag Co.*, 22 CCPA 258, T.D. 47210 (1934) for the proposition that a method of packing, in that case paper on different size rolls, did not change the merchandise into a

---

**8.** The correct reading of item 141.75, TSUS, eliminates the foundation for one of appellee's arguments, namely that the words "packed in brine" in 141.75 and "packed, ready for shipment" in § 402(b) "speak in common terms," both thereby recognizing that the cost of that packing (the brine) could be added to the selling price of the merchandise without packing. Further, the court below also appears to have been influenced by the incorrect reading as indicated by the above-quoted statement that "a particular type of packing is named in the tariff description."

**9.** *Cf.* footnote 5, supra, for complete text.

**10.** If there is no "export value," the statute provides for alternative methods of valuation.

different article. The article imported was held to be paper.

■ We do not find these authorities in conflict. The determinative factor in each case was the physical condition of the merchandise. On the facts of this case we must agree with the Government that the "imported merchandise" is cucumbers in brine, not fresh cucumbers. Brining results in a permanently changed condition of the vegetables themselves. Appellee does not dispute that the salt content of the cucumbers was increased, as found by the court. Indeed, it was appellee's witness who testified that some of the salt from the brine is absorbed by the cucumbers. Thus, fresh cucumbers, once immersed in brine, are not thereafter in the condition of being "fresh" and cannot again become fresh by discarding the brine. The "packing" to some extent becomes a component of the imported article.

Congress has, we believe, recognized the physically different conditions of fresh vegetables and vegetables in brine in the classification schedule. By seeking classification as "in brine" appellee has acknowledged that its imported merchandise is physically different from fresh cucumbers. It is only by the addition of the brining that the goods take on their basic character. Fresh cucumbers, therefore, are not "the imported merchandise," freshness not being the condition of the goods at importation.

■ Appellee's further argument that fresh cucumbers and cucumbers in brine are not "dissimilar" goods is irrelevant to determining what is "the imported merchandise." While the statute provides that an "export value" may in some circumstances be based on the selling price of "similar" merchandise, that does not change the initial question. It must be determined what the imported merchandise is inasmuch as the various bases set forth in the statute for determining "export value" must be considered seriatim. If there is a price for identical goods, export value cannot be based on the price for similar merchandise.

Imported merchandise in § 402(b) means the goods actually imported, not similar goods. In this case the imported merchandise is cucumbers in brine.

*"Such or Similar Merchandise"*
*Under Section 402(b)*

■ Having determined that the imported merchandise is cucumbers in brine does not end our inquiry. Even though the price at which independent farmers sold fresh cucumbers is not a price for the "imported merchandise," appellee would be entitled to prevail if the price paid for fresh cucumbers is for "similar" goods and if there is no selling price for cucumbers in brine which must be given precedence as an export value.

In this connection we must look to the definitions of "such or similar merchandise" provided in § 402(f)(4), (19 U.S.C. § 1401a(f)(4)):

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value . . . can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D) Merchandise which satisfies all the requirements of subdivision (C) ex-

cept that it was produced by another person.

The Government argues that the sales of cucumbers in brine by Pickle-Mex to Arnold provides an export value for the "merchandise undergoing appraisement," the first category above, and asks that we overturn the finding of the court below that there were no bona fide sales between these parties. However, there is substantial evidence in the record for this finding by the court.[11] Thus, appellee has established that this basis for appraisement, presumably the basis used by the appraiser, was incorrect.

The Government further asserts that the court erred in next rejecting the price at which Pickle-Mex sold a single shipment of cucumbers in brine to an unrelated third party. Such goods would clearly fall within the description "other merchandise which is identical in physical characteristics" in subparagraph (A) above. On this point we disagree with the court's analysis that this single sale of cucumbers in brine was not a representative sale solely because of the much greater number of sales of fresh cucumbers. The comparison is not valid. If we were to remand for further consideration of this sale, the Government might prevail on this issue since a price for identical goods must be given precedence as an export value over a price for similar goods. However, in the interests of judicial economy, we will assume that this sale is not representative, as urged by appellee,[12] thereby reaching the question whether fresh cucumbers and cucumbers in brine are "similar merchandise" as that term is defined in § 402(f)(4).

Even before the Customs Simplification Act of 1956 added the above quoted definition of "such and similar merchandise," this court interpreted "similar" merchandise to mean merchandise which is not only used for the same purpose, but also is substantially the same in material and costs and sold at substantially the same price, thereby making the goods commercially interchangeable. *Cf. C. J. Tower & Sons v. United States*, 50 CCPA 76, C.A.D. 824 (1963) (non-tipped bobby pins not similar to rubber tipped bobby pins, the entries being made in 1952–54); *United States v. Kraft Phenix Cheese Corp.*, 26 CCPA 224, C.A.D. 21 (1938) ("Standard" and "Portion" Roquefort cheese not similar because process used to make "Portion" type enabled it to be smoothly cut). The definition set forth in subparagraph (C) above incorporates at least these criteria. Appellee made no attempt to prove similarity except in the purpose for which pickle-type fresh cucumbers and cucumbers in brine are used. Being like the merchandise undergoing appraisement in use, while a necessary element of "similar" merchandise, is insufficient to establish that the merchandise is similar within the meaning of the statute. *B. A. McKenzie & Co. v. United States*, 47 CCPA 143, C.A.D. 748 (1960).

*Summary*

Merchandise must be appraised on the basis of its condition as imported. Because brining alters the physical condition of the vegetable, the imported merchandise is cucumbers in brine not fresh cucumbers.

The finding by the court below that appraisement could not be based on the transactions between Arnold and Pickle-Mex in view of the interrelationship of the companies is supported by substantial evidence.

On the assumption that the single sale of cucumbers in brine to a third party is not representative and does not stand in the way of considering an export value based on the sale of similar goods, we conclude that the sales price for fresh cucumbers is not for merchandise "similar" to cucumbers in brine, within the statutory definition pro-

11. Some of the more pertinent evidence is noted in footnote 4.

12. The record with respect to this sale is meager. Appellee argues that it was unable to put in all of its proof that the sale was unrepresentative because the court sustained the Government's objection to appellee's line of questioning concerning the sale.

vided in § 402(f)(4)(C). Appellee has proved similarity in use only, which is insufficient.

Arnold has, thus, failed to satisfy the dual burden of proof imposed on one challenging the validity of the value at which its goods were appraised. Even though the basis for the appraised value, "sales" between Arnold and Pickle-Mex, has been proven erroneous, the appraised value for the imported merchandise must remain in effect since the only alternative basis asserted by Arnold, sales of fresh cucumbers, is also erroneous.

Accordingly, we *reverse* the judgment of the United States Court of International Trade.